# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORENZO SIMS,<br>      Plaintiff<br><br>v.<br><br>WEXFORD HEALTH SOURCES, et al.,<br>      Defendants. | C.A. 14-108 Erie<br><br>Magistrate Judge Baxter |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I.  INTRODUCTION

### A.  Relevant Procedural and Factual History

On April 10, 2014, Plaintiff Lorenzo Sims, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this civil rights action pursuant to 42 U.S.C. § 1983, by filing a *pro se* civil rights complaint [ECF No. 9]. Plaintiff subsequently filed an amended complaint on August 1, 2014, which superseded the original complaint and is the operative pleading in this case [ECF No. 30]. Named as Defendants in the amended complaint are: Wexford Health Sources ("Wexford"), the medical services provider that was under contract with the Pennsylvania Department of Corrections ("DOC") to provide medical services to DOC inmates at all times relevant to this case; Corizon, Inc. ("Corizon"), the medical services provider that was formerly under contract with the DOC to provide medical services to DOC inmates prior to January 1, 2013; Dr. Nancy Flynn McGarvie

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 4, 44, 58).

("McGarvie"), the former Medical Director at SCI-Forest; Jamie Ferdarko ("Ferdarko"), RN Supervisor at SCI-Forest; Kim Smith ("Smith"), Chief Health Care Administrator at SCI-Forest; Michael Overmyer ("Overmyer"), Superintendent at SCI-Forest; SCI-Forest; Dr. Symons ("Symons"), a former staff physician at SCI-Forest; and Gary Prinkley ("Prinkley"), RN Supervisor at SCI-Forest.[2] For ease of convenience, Defendants Ferdarko, Smith, Overmyer, SCI-Forest, and Prinkley will hereafter be referred to collectively as "DOC Defendants."

In his *pro se* amended complaint, Plaintiff alleges that he is a paraplegic as a result of several gunshot wounds he received on April 22, 2008, which left him with a bullet lodged in his spine and metal rods holding his right elbow together (ECF No. 30, Amended Complaint, at p. 1). Plaintiff alleges that the spinal cord specialist who initially treated his injuries diagnosed him with "severe spine pain," for which he prescribed Oxycodone 30mg. (Id.). On August 2, 2012, Plaintiff was incarcerated in Montgomery County Prison, and was subsequently transferred to SCI-Graterford on May 30, 2013, and SCI-Camp Hill on June 6, 2013 (Id. at p. 2, ¶¶ 2-4). Plaintiff alleges that he continued to receive his Oxycodone medication at all three institutions. (Id.).

On September 5, 2013, Plaintiff was transferred to SCI-Forest, where he was seen at sick call by Defendants McGarvie and Ferdarko on September 9, 2013. (Id. at p. 3, ¶ 5). During this sick call, Plaintiff alleges that Defendant McGarvie did not evaluate him, yet discontinued his Oxycodone medication after Defendant Ferdarko allegedly commented about Plaintiff's past drug offenses. (Id. at p. 3, ¶ 6). Plaintiff then wrote to Defendants Smith and Overmyer,

---

[2] According to the docket in this case, Defendants Corizon, McGarvie, and Symons have never been served with the

complaining about Defendant McGarvie's discontinuation of his medication. According to Plaintiff, Defendant Smith responded that he "will not be prescribed Oxycodone here," while Defendant Overmyer responded that "Dr. McGarvie has your best interest." (Id. at p. 4, ¶¶ 7, 8). Plaintiff then filed a grievance against Defendant McGarvie, noting that he had been given Oxycodone at both SCI-Graterford and SCI-Camp Hill. In response, Defendant Prinkley stated that "SCI-Graterford and Camp Hill were complying with your wishes." (Id. at p. 4, ¶ 9).

On October 29, 2013, Plaintiff was seen at sick call by Defendant Symons, who agreed to write a prescription for Oxycodone 30mg; however, Defendant McGarvie cancelled the order when she heard about it. (Id. at pp. 4-5, ¶¶ 10-11). On January 6, 2014, Plaintiff was again seen at sick call by Defendant Symons, at which time Defendant Symons refused Plaintiff's request for Oxycodone, indicating that he was instructed not to give Plaintiff any narcotics. According to Plaintiff, Defendant Symons also refused his requests for an MRI or CAT scan of his spinal cord. (Id. at p. 5, ¶ 12).

Based on the foregoing, Plaintiff claims that Defendants Wexford and Corizon have a policy, practice, and custom of denying inmates prescribed medical treatment in order to save costs, and that the individual Defendants have been deliberately indifferent to his serious medical needs, all in violation of his rights under the eighth amendment to the United States Constitution.

Both Defendant Wexford and the DOC Defendants have filed motions to dismiss [ECF Nos. 33 and 48, respectively], asserting that Plaintiff has failed to state claims against them upon which relief may be granted. In addition, the DOC Defendants assert that Plaintiff's claims

---

complaint, nor has any attorney entered an appearance on behalf of any of them.

should be dismissed because he has failed to exhaust his administrative remedies. Despite having been given ample time to respond to Defendants motions, Plaintiff has failed to do so. This matter is now ripe for consideration.

### B. Standard of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If

11

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Exhaustion of Administrative Remedies

##### a. The Exhaustion Requirement

The DOC Defendants argue that Plaintiff's claims should be dismissed due to Plaintiff's alleged failure to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that c1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### b. The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written

appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### c. Analysis

Here, the DOC Defendants assert that Plaintiff filed Grievance # 477282 at SCI-Forest claiming that he was wrongfully denied medically necessary pain medication, but failed to name any of the DOC Defendants in the grievance, and also failed to timely appeal the denial of the grievance in accordance with the DOC's administrative procedures. In support of this assertion, the DOC Defendants have submitted copies of all documents related to Grievance # 477282 [ECF No. 49-1]. However, the DOC Defendants have failed to authenticate these documents with a sworn declaration certifying that they constitute a complete and accurate record of Plaintiff's grievance proceedings. Absent such authentication, this Court cannot rely on such documents to definitively conclude that Plaintiff has failed to exhaust his administrative remedies as to the claims raised against the DOC Defendants in this case. Accordingly, based upon the record before this Court, the DOC Defendants' motion to dismiss Plaintiff's claims for failure to exhaust administrative remedies must be denied.

### 2. Defendant Wexford

Defendant Wexford argues that Plaintiff's claims against it must be dismissed because he has failed to sufficiently plead or establish that it has any policy, custom, or practice that violates

15

his constitutional rights. This Court agrees.

According to the seminal case of Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978), a municipality cannot be held vicariously liable for the constitutional torts of its employees, unless the plaintiff can establish the existence of a policy or custom that resulted in a constitutional violation. This shield from vicarious liability has been extended to private corporations that are under contract with the state, like Defendant Wexford. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under these theories); Garafola v. Lackawanna County Corr. Care, Inc., 2008 WL 4861992, at *2 (M.D.Pa. Nov. 6, 2008) ("Courts within the Third Circuit … have held that *Monell* holding does apply to private companies that contract with the government") (citations omitted).

While a plaintiff may establish *Monell* liability by identifying a policy, custom, or practice that allegedly resulted in a constitutional violation, he may not do so in conclusory fashion. Here, Plaintiff alleges that Wexford has "a policy, practice, and custom of denying inmates prescribed medical treatment to ensure that [it] receives the highest financial profits." (ECF No. 30, Amended Complaint, at p. 6, ¶ 13). This allegation is insufficient to establish liability against Wexford. See Winslow v. Prison Health Services, 406 Fed. Appx. 671, 674 (3d Cir. 2011) (prisoner's conclusory allegation that he was harmed by DOC medical provider's "policies to save money" found insufficient to state an Eighth Amendment deliberate indifference claim); Kietz v. Washington County, Pa., 2014 WL 1316129, at *14 (W.D.Pa. Mar. 31, 2014)

(prisoner's allegation that municipality had a policy, custom, or practice to deny inmates access to medical care based on costs found to be "entirely conclusive").

Moreover, Plaintiff's conclusory allegation that Wexford maintains such a policy is belied by his acknowledgement that he was prescribed Oxycodone by Wexford employees at both SCI-Graterford and SCI-Camp Hill prior to his arrival at SCI-Forest. In light of this fact, it would be futile to allow Plaintiff to amend his complaint to identify Wexford's alleged policy with greater specificity, since no such policy is evident from the actions of its employees at other state institutions. Thus, Plaintiff's claim against Defendant Wexford will be dismissed.

### 3. Defendant SCI-Forest

The DOC Defendants have moved to dismiss Plaintiff's claims against SCI-Forest based upon Eleventh Amendment immunity.

The Eleventh Amendment proscribes actions in the federal courts against, *inter alia*, states and their agencies. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977)(state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it... a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), citing Alabama v. Pugh, 438 U.S. 781 (1978).

It is well-settled that the Department of Corrections, which administers all state correctional institutions including SCI-Forest, is an agency or arm of the Commonwealth of Pennsylvania and is, thus, entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See Steele v. Pennsylvania, 2009 WL 614800 at *8 (W.D.Pa. Mar. 6,

2009)(DOC). Likewise, SCI-Forest is an alter-ego of the DOC and is, therefore, entitled to the same immunity. See Wood v. Pennsylvania Bd. of Probation and Parole, 2009 WL 1913301 at * 3 (W.D.Pa. July 2, 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to being sued, Wilson v. Vaughn, 1996 WL 426538 at *1 n.2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, Plaintiff's claims against Defendant SCI-Forest are barred by the Eleventh Amendment and will be dismissed.

### 4. Defendant Smith

The DOC Defendants argue that Plaintiff's claims against Defendant Smith should be dismissed because she is a non-medical Defendant[6] and Plaintiff was under the supervision of medical personnel at the time of the alleged deprivation of medical care. The Court agrees.

The Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). In Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004),

---

[6] As Health Care Administrator, Defendant Smith is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim. See Spencer v. Beard, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17, 2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995).

the Third Circuit expanded upon its reasoning in <u>Durmer</u>, as follows:

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Since the only allegations against Defendant Smith in this case relate to the discontinuance of prescription medication by Defendant McGarvie, a medical professional, Defendant Smith cannot be held liable for deliberate indifference. As a result, Plaintiff's claims against Defendant Smith will be dismissed.

### **5.** **Defendants Overmyer and Prinkley**

The DOC Defendants next argue that Plaintiff's claims against Defendants Overmyer and Prinkley should be dismissed because they were not personally involved in the alleged constitutional deprivation.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). At a minimum, such liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." <u>Id</u>. If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. <u>Rode</u>, 845 F.2d at 1208; <u>Cooper v. Beard</u>, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

19

Here, Plaintiff's allegations against Defendants Overmyer and Prinkley arise solely from their responses to his request and/or grievance that was written after Defendant McGarvie had already discontinued his prescription medication. Thus, Plaintiff has failed to show that these Defendants had any personal involvement in the complained-of misconduct, and his claims against them will be dismissed accordingly.

### 6. Defendant Ferdarko

The DOC Defendants also seek dismissal of Plaintiff's claims against Defendant Ferdarko, arguing that he has failed to state a claim of deliberate indifference upon which relief may be granted.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[7] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed

---

[7] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff's claim against Defendant Ferdarko arises solely from her alleged comment regarding Plaintiff's past drug use that allegedly prompted Defendant McGarvie to discontinue his prescription for Oxycodone. This comment, alone, does not constitute deliberate indifference to a serious medical need, as it simply apprised Defendant McGarvie of the risk of continuing Plaintiff on a narcotic pain medication. Nonetheless, Plaintiff acknowledges that he was offered alternative non-narcotic pain medication, which he found inadequate. Thus,

Plaintiff's claim essentially arises from his disagreement with the decisions of his medical care provider, which is not actionable . White, 897 F.2d at 110 ("mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation). Thus, Plaintiff's claim against Defendant Ferdarko will be dismissed.

### 7.     Prison Litigation Reform Act

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A. Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. See 28 U.S.C. §1915(e)(2).[8] Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania

---

[8] Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, Defendants Corizon, McGarvie, and Symons, have never been served in this case, nor has any attorney entered an appearance on their behalf. As a result, said Defendants will be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they were not served within 120 days of the date the complaint was filed in this case.

An appropriate Order follows.

---

such relief."

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORENZO SIMS, )
        Plaintiff )
         ) C.A. 14-108 Erie
    v. )
         ) Magistrate Judge Baxter
WEXFORD HEALTH SOURCES, et al., )
        Defendants. )

## **ORDER**

AND NOW, this 30th day of June, 2015,

IT IS HEREBY ORDERED that the motions to dismiss filed by Defendant Wexford [ECF No. 33] and the DOC Defendants [ECF No. 48] are GRANTED, and Plaintiff's claims against said Defendants are DISMISSED.

IT IS FURTHER ORDERED that, pursuant to the authority granted by the PLRA, Plaintiff's claims against Defendants Corizon, McGarvie, and Symons are DISMISSED for failure to prosecute, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk is directed to mark this case closed.

                                                   /s/ Susan Paradise Baxter
                                                   SUSAN PARADISE BAXTER
                                                   United States Magistrate Judge